THE PEOPLE OF THE STATE OF NEW YORK, Plaintiffs in Error,
    *v.* KENDALL PARKER, Defendant in Error.

Upon an indictment for selling unwholesome beef, knowing it to be such,
the defendant's counsel requested the judge to charge the jury, that, if
they should find that the beef was purchased as an article of merchan-
dise, and not for domestic consumption, then the indictment could not be
sustained. The judge refused so to charge, and the jury found the
defendant guilty. The General Term reversed the judgment, on the
ground of error in the refusal of the judge to charge as requested.
*Held,* that the refusal was *not error,* and the conviction, being properly
found, must be affirmed.

The opinion in the case is worthy of attention, though not fully concurred
in by the court.

CLERKE, J.   The defendant in error was indicted in the
Court of Sessions of the county of Broome, for selling, on or
about the 20th of May, 1864, to Sabin McKinney, Charles
McKinney and S. Mills Ely, 500 pounds of beef as good and
wholesome food, to be eaten and used for food by the said
persons, and by divers other persons, citizens of the State of
New York; whereas, in truth, the said beef was not good
and wholesome food, but, on the contrary, was unwholesome
and diseased and unfit for food, and not fit to be eaten by
man; the said Kendall Parker well knowing the said beef
to be diseased and unwholesome, etc.   The beef was packed
in a barrel and brought to McKinney & Co., on the 20th
May, 1864, who paid for it without examining the barrel, on
the assurance by the plaintiff in error, that it had been
brined only the day previous; that he had examined it, and
that it was in excellent order.   In the afternoon of the same
day, the attention of Sabin McKinney, one of the firm, was
called to the beef, by reports that it was damaged.   He had
it examined, and it was found to be in a very bad condition.
It appeared, from the evidence of one of the firm, S. Mills
Ely, that their business is chiefly, almost wholly, a wholesale
business in flour, pork, beef, glass, nails, etc., and that in the
article of beef they did not buy or sell any thing less than a
barrel.   They bought this beef for sale, and not for consump-

tion. But, he testified, on cross-examination, if any one of the firm wanted any thing for his own use out of their stock, he took it and charged it on the books. "Assuming this beef to be good," he adds, "if we wanted any of it for our own use, we should have taken it just as we did other things; we do not buy beef for any thing but for food for man;" and, in the direct examination resumed, he said, "We bought this beef as an article of merchandise to sell it again, and not for use or consumption by us, except as above stated." The prisoner was found guilty. The only question in this case is that which arises upon the refusal of the judge to charge the jury, that, if they should find or believe that McKinney & Co. purchased this beef as an article of merchandise, and not for domestic consumption, then the indictment could not be sustained.

In the Supreme Court at General Term, sixth district, the judgment of the Court of Sessions was reversed, on the ground that the judge erred in refusing to charge as requested; holding that a sale of unwholesome beef for the food of man to a wholesale dealer in the market, the vendor knowing it to be such, is not an indictable offense. No case, it is said, in the opinion of the General Term, can be found in the books, where an indictment has been sustained in such a case. But, can any case be found in the books, in which the exact question arose? I have not found one; and, in the absence of precedent, we must resort to general principles.

Ethically, it is as culpable, knowingly to commit an act calculated to injure unknown, as to commit an act calculated to injure known, persons. The injury, and, therefore, the moral wrong, is as great in the one case as in the other. The technical legal rule which it is supposed ignores this plain dictate of reason, or natural law, should be of no dubious authority. It should be established beyond question. So far from this, it appears to me, that such a rule has no place at all in our criminal jurisprudence. The essence of legal crime is the wrongful intent, combined with a wrongful act; and the law seems not to discriminate between cases where the intent is directed against particular individ-

uals, and those where the act falls upon individuals not in the mind of the perpetrator at the time of the commission of the act. The general principle may be applied to this case, that, when a man, intending one wrong, fails, and accidently commits another, he will, except where the particular intent is a substantive part of the crime, be held to have intended the act which he did commit. So, where a blow aimed at one person falls upon another, and kills him, this is murder. As, if a man, out of malice to A, shoots at him, but misses him, and kills B, it is no less a murder than if he killed A. So, if he deliberately fires a pistol into a crowd, without aiming at any particular individual, and kills one of the crowd, he is guilty of murder. Is there any sound reason why this principle should not apply to offenses of a lower degree, — to offenses against the public health? There is no reason why the analogy should not be preserved in respect to these, as well as to offenses affecting human life.

In the case before us, the defendant in error did not, indeed, intend to injure any specified persons, but he was guilty of a wrongful intent in doing that which was calculated to injure some persons; and, it matters not, as far as the purpose of the law is concerned, whether those persons were or were not designated by him. · The purpose of the law is to prevent the injury; and the gist of the crime is the commission of the injury without regard to the particular persons against whom the act is directed. To protect the health of citizens, is as much the duty of the State as to protect their limbs or their lives from the acts of wrong-doers; and, if a man, intending to kill a particular individual, kills another, he is deemed guilty of murder. I do not see why a man, who knowingly sells unwholesome and diseased beef for human food, should be absolved from guilt, because he was not informed of the particular individuals who were to suffer from the use of it. I think the whole analogy of our criminal law is against the proposition mentioned at the General Term. The wrongful intent in this case was fully proved, by showing, that the defendant in error knew what was the condition of the beef; and the wrongful act was proved by

the sale of the beef to McKinney & Co., to be used as human food; and this, in my opinion, was all that was necessary to constitute the offense.

Besides, the request upon which this writ of error is founded is in another respect erroneous. It asks the judge to instruct the jury, that, if they find McKinney & Co. purchased the beef as an article of merchandise, and not for domestic consumption, then the indictment could not be sustained. It thus asks an instruction to the jury, that they should be governed by the intention of the purchaser, instead of that of the prisoner. This is plainly wrong; their concern was with the intention of the latter. The avowed intention of the purchaser, no doubt, would have tended to show, as a matter of evidence, what was the intention of the seller. But it was the intention of the seller, not that of the purchaser, which was a constituent element of the offense.

The request was also inadequate in employing the words "domestic use," and implies, that the meat must have been sold for the purpose of being consumed by the family of the purchaser. As I have already endeavored to show, the offense is complete, if the unwholesome meat is knowingly sold as and for human food; undoubtedly, if it is sold, generally, as merchandise, without any knowledge on the part of the seller that it is to be used for human food, the offense is not indictable; because it might be applied in such case to the purpose, for instance, of manure, or as food for wild beasts in a menagerie. The judgment of the General Term should be reversed, and that of the Court of Sessions affirmed.

I understand, that the court unanimously concur in the propositions I have laid down in relation to the requests addressed to the judge by the prisoner's counsel; but they do not agree with all my general propositions in the preceding portion of the opinion.

Decision of General Term reversed; conviction affirmed.