LEVI S. BURCH and others, Appellants, v. ELIJAH
SPENCER, Survivor, etc., and Administrator of MOR-
GAN SPENCER, Deceased, Respondent.

*Sale of articles, to be used for food — implied warranty on.*

In all cases of an executed contract of sale of articles of food, when the vendor
has personal knowledge of the quality and condition of the articles sold, which
are not known to the purchaser, and knows that the purchaser intends to
use the articles for food, or to sell them to others to be used for that purpose,
the law implies a warranty that the articles are sound, wholesome, and fit to
be used as articles of food.

The plaintiffs, who are engaged in buying and packing meat and pork, to be
sold at wholesale and retail as an article of food, purchased, through an agent
of defendant, the meat of a hog, at the highest market price for pork to be
used as food, and paid therefor. Defendant knew it was to be used as food,
and before the sale, and in the presence of the agent, denied that the carcass
was that of a boar, although such was the fact. The flesh of a boar is unfit
for human food, and is used only for grease or oil, and is worth much less
than that fit to be eaten.

*Held*, that there was an implied warranty that the hog was fit to be used for food,
and that for a breach thereof plaintiffs could recover the damages sustained.

Appeal from an order of the County Court of Broome county,
denying a motion for a new trial on a case and exceptions, and
affirming a nonsuit ordered at the trial. The action was originally
brought against Morgan Spencer and Elizabeth Spencer. After
an appeal was taken from the County Court of Broome county,
Morgan Spencer died, and letters of administration, with the will
annexed, were issued to Elijah Spencer, as administrator of his
estate, who, as such administrator, was, by order of the County
Court, made a party defendant in the place of said deceased.

*B. T. Wright*, for the appellants. In contracts for provisions,
it is always implied that they are wholesome. (3 Black. [Cooley's
ed.], 165, bottom paging, 109; *Hart* v. *Wright*, 17 Wend., 272;
*French* v. *Vining*, 102 Mass., 105; *Devine* v. *McCormick*, 50
Barb., 116; *Van Bracklin* v. *Fonda*, 12 Johns., 468; *Hoe* v. *San-
born*, 21 N. Y., 561; *People* v. *Parker*, 38 id., 86; 2 Addison on
Contracts [3 Am. ed.], section 621.)

*W. H. Hecox*, for the respondent. There was no warranty given on the sale, and no fraudulent representations were made; and the defendants were not liable on a warranty, nor for deceit. (*Carley* v. *Wilkins*, 6 Barb., 557; *Hotchkiss* v. *Gage*, 26 id., 141; 1 Hilt., 266; *Nickols* v. *Pinner*, 18 N. Y., 295; *Henry* v. *Henry*, 8 Barb., 588.) There was no implied warranty of wholesomeness or soundness raised on the sale. It is only when provisions are sold "for immediate domestic use" that an implied warranty of their wholesomeness is raised. (*Moses* v. *Mead*, 1 Den., 378; aff'd in 5 id., 617; Potter's Ed., Willard's Eq., 158; 1 Pars. on Cont. [5th ed.], 588, note c.; *Hoe* v. *Sanborn*, 21 N. Y., 560; *Burnby* v. *Bollett*, 16 M. & W., 644.) It was merchantable as soap grease. (*Wright* v. *Hart*, 18 Wend., 454.) The rule of *caveat emptor* should be applied to this sale. (*Duffendorf* v. *Gage*, 7 Barb., 18; *Hotchkiss* v. *Gage*, 26 id., 141; *Hoe* v. *Sanborn*, 21 id., 563; *Bartlett* v. *Hoppoch*, 34 id., 218; 2 E. D. Smith, 34.)

TAPPAN, J.:

This action originated in a Justice's Court, in Broome county, where the defendants had a verdict and judgment in their favor. The plaintiffs appealed from such judgment to the Broome County Court for a new trial, where a trial was had before a jury, and judgment of nonsuit entered, with costs. Plaintiffs then moved such court for a new trial, which motion was denied; from such order plaintiffs appeal to this court. The order is appealable as affecting a substantial right, and the appeal brings up the question whether, upon the case made on the trial, the nonsuit ought to have been granted. (4 Wait's Pr., 342.)

The complaint alleges that the plaintiffs were copartners at Marathon, N. Y., under the firm-name of Burch, Burgess & Co., doing business there in buying and packing meat and pork for shipment and sale at New York and other markets for food, the defendants well knowing such fact; that the defendants offered to deliver to the plaintiffs, for the purpose aforesaid, the meat of one hog, and to induce the plaintiffs to purchase the same, *warranted* and falsely and fraudulently represented to the plaintiffs that the said meat or pork of said hog was of good, merchantable quality,

fit and proper for food and for packing for such markets and such use; that in consequence of such representations plaintiffs purchased the meat of such hog, and paid therefor the sum of $26.60; that such meat, at the time of said sale, was not good and of merchantable quality, and was not fit and proper for food, nor for packing for such markets, but was of bad, unsalable and unmerchantable quality, and was not fit or proper for food, or for packing and shipping in the markets before mentioned, nor in any market for food; that the same was stale, strong, unsavory, disgusting, unpalatable meat or pork; that the same was *boar* meat, and tainted with the unsavory quality, taste and smell of the same, rendering it unfit for food, or for packing for food, as defendants at the time of the sale well knew; that said meat or pork, if of the kind and quality warranted and represented, would have been of the value of $45, but in fact was of no value to plaintiffs; that by reason of the sale, plaintiffs bestowed care, attention, labor and material upon such meat or pork of the value of $15, which was lost. Defendants answered, denying the complaint.

It appeared upon the trial in the County Court, that plaintiffs, in November, 1871, were partners at Marathon, Cortland county; that their business was buying and packing pork, mostly for home consumption; that they sold not only at wholesale, but at retail; that portions of the meat packed by them was sold to their immediate neighbors for food; that the loins and spare-ribs were sold to their neighbors for fresh meat, and so used by them; plaintiffs smoked the hams, and retailed what they could in the neighborhood, and wholesaled the rest; plaintiffs also used from the fresh pork themselves; that the pork bought by plaintiffs was for food for mankind, and for no other purpose, and there was evidence tending to prove that the defendants knew it.

It also appeared that one Jabez Johnson, an agent of plaintiffs, at Whitney's Point, purchased the hog in question for them, in November, 1871. The price paid was five cents per pound—the highest price paid that season for pork to use as food. On the day of the sale, and before the purchase, defendants claimed to Johnson that they were going to send the hog to New York with a box of poultry; and the same day after the hog had been bargained for, but before weighed, delivered, or paid for, one of the

defendants, in the presence of the other and of Johnson, when one Rogers suggested that the pork was that of an old boar hog, denied the fact. Immediately after, the hog was delivered and paid for. The hog was nicely dressed, as hogs are dressed when intended for food; the testacles were removed by the defendants, on the day the hog was butchered; the sacks containing them, except a small piece of one of them, had also been removed; this could only be detected by close inspection. The tusks had the appearance of having been broken off but a short time before.

The meat of a boar hog is unfit for food for man; it had never been worth more than one cent per pound, and that for grease or lard oil only. Defendants knew the quality of this class of meat, and the use to which it could be put, and before plaintiffs' agent applied to purchase the pork in question had intended to dispose of it for such purpose. It also appeared that a person, although acquainted with boars, might be deceived; they were sometimes bought by experienced men without knowing it. Plaintiffs' agent bought the hog for merchantable pork for food. Upon trial the meat of the hog purchased could not be used, and immediate notice was given to defendants.

The County Court held that the plaintiffs could not maintain this action on the ground of fraud in the seller, because the action is based upon a contract, and not upon fraud; that there was no evidence in the case of an express warranty made by the defendants to the plaintiffs respecting the quality of the hog in question. Plaintiffs asked to amend their complaint and set up a charge of fraudulent concealment, in connection with the complaint as it stood. The motion was denied. Plaintiffs then asked to go to the jury upon the question of fraud in the complaint as it stood. The court denied the request. The plaintiffs then asked to submit to the jury the question whether there was sufficient evidence for them to find an implied warranty, and claimed that there was sufficient evidence that defendants knew, at the time of the sale, that the hog was purchased for food for man. The court denied the request, and granted defendants' motion for a nonsuit, to each of which rulings plaintiffs duly excepted.

We think the County Court was right in holding that the complaint is for a warranty, and not upon fraud, and in denying the

plaintiffs' motion to amend it in such manner as to change the character of the action from contract to tort. At the last May term of this court it was held that the County Court, in a case where a new trial was had on appeal from Justice's Court, could not allow an answer interposed in Justice's Court, consisting of a general .denial, to be amended by inserting therein new and affirmative defenses, such as payment, set-off, or counterclaim; that no amendments should be allowed which would entirely change the issues in the court below, but only such as would enable the parties to try such issues. (*Reno* v. *Millspaugh*, 21 N. Y. S. C. R., 229.) The complaint is sufficient to sustain an action upon an implied warranty. The general averment therein that the defendants warranted the article sold is sufficient; under such averment, an implied or express warranty could be proven. (*Hoe* v. *Sanborn*, 21 N. Y., opinion, 555.) The contract was executed, and there was no express warranty. In such a case, no warranty of any kind can be implied from the fact, that a sound price was paid, as was said in *Moses* v. *Mead* (1 Denio. 378); *S. C.*, affirmed in Court of Errors (5 Denio, 617). *Caveat emptor*, and not *caveat venditor*, is the rule of the common law, and that is our law.

In that case, in August, the plaintiffs, being merchants and dealers in provisions in the city of New York, bought of the defendants, who were wholesale grocers and provision merchants in the same city, 194 barrels of mess beef, and paid therefor the regular market price for good, sound, wholesome mess beef. The beef had been inspected by a New York inspector in June before, and branded "mess beef," and the inspector's bill was shown to the plaintiffs at the time of the sale. The plaintiffs examined one barrel of the beef, and might have examined more, had they chosen to do so. The beef was delivered on the day of the sale, and the purchase-price paid the next day. There was no express warranty by the defendants, nor was there any express agreement by the plaintiffs to take the risk of soundness, but the beef was bought and sold at the price of, and believing it to be, good, sound, sweet and wholesome mess beef. It was bought by the plaintiffs as provision merchants, not for consumption in their own families, but to be sold to their customers, in the usual course of

their business. The beef was, in fact, unsound, sour, tainted and unwholesome as food for mankind, by reason whereof plaintiffs sustained damages. In that case, it was held that the beef was sold as merchandize, and that there was *no implied warranty of soundness.*

In giving the reasons for the decision, the court state that, on a sale of provisions for immediate consumption, the vendor may be held responsible, in some form, for the sound and wholesome condition of the articles which he sells; that it is not, perhaps, too much to presume that butchers, grocers and others, who furnish by retail the usual supplies for the families of customers, are, from the nature of their employment, *acquainted with the quality of the articles in which they deal;* but there is a very plain distinction between selling provisions for domestic use and selling them as articles of merchandize, which the buyer does not intend to consume, but to sell again. Such sales are made in large quantities, and *with less opportunity to know the actual condition of the goods than when they are sold by retail.* This judgment was affirmed in the Court of Errors by an equally divided court.

It was said by SELDEN, J., in *Hoe* v. *Sanborn* (21 N. Y., opinion 555): "It is a universal doctrine, founded on the plainest principles of natural justice, that whenever the article sold has some latent defect, which is known to the seller, but not to the purchaser, the former is liable for this defect, if he fails to disclose his knowledge on the subject at the time of the sale. In all such cases, where the knowledge of the vendor is proved by direct evidence, his responsibility rests upon the ground of fraud. But there are cases in which the probability of knowledge on the part of the vendor is so strong, that the courts will presume its existence without proof; and, in these cases, the vendor is held responsible upon an *implied warranty.*"

In *Van Bracklin* v. *Fonda* (12 J. R., 468), it was held that the sale of a quarter of beef from an animal slaughtered for fear she would die, concealing the fact that the animal was diseased, was equivalent to the suggestion of a falsehood that she was sound.

In *Divine* v. *McCormick* (50 Barb. S. C. R., 116), plaintiff bought a heifer of defendant, which he told defendant he was going to kill the next day. The heifer when butchered was found

to be diseased; the disease was not visible externally. There was evidence given tending to show that the defendant knew, or had reason to suspect the diseased condition of the heifer at the time of the sale. The jury in Justice's Court rendered a verdict for the defendant; the County Court reversed the judgment, and the judgment of the latter court was affirmed by the General Term of this court. In *The People* v. *Parker* (38 N. Y., 85), upon an indictment for selling unwholesome beef knowing it to be such, the defendants' counsel requested the court to · charge the jury, that if they should find that the beef was purchased as an article of merchandize, and not for consumption, then the indictment could not be sustained. The judge refused to so charge, and the jury found the defendant guilty; the Court of Appeals held the conviction proper and affirmed it.

CLERK, J., who delivered the opinion of the court in the case, says, at page 87 : "I do not see why a man who knowingly sells unwholesome and diseased beef for human food, should be absolved from guilt because he was not informed of the particular individuals who were to suffer from the use of it." In the case at bar, as has already appeared in the statement of facts proven, the defendants knew that the pork offered for sale to the plaintiffs' agent was the pork of a boar; that such meat was unwholesome and unfit for food for man. They also knew from the price the plaintiffs paid for the pork, and the fact that Rodgers proposed to buy some of the meat for food, that the same was intended for food · for man, and not to be manufactured into grease or lard oil, the only use it could have been properly put to. They concealed and denied the fact that the animal which they were so selling was a boar. The circumstances of the case are such that the law implies a warranty on the part of the vendor, that the meat offered for sale was not that of a boar, and was of a character fit and suitable for food for man. (3 Blackstone [Cooley's ed.], 165.) I believe that this view of the case is in strict accordance with public policy, which requires that only articles that are sound, wholesome and fit for use, shall be knowingly sold for food, and that in accordance with such policy the law · implies a warranty in all cases of an executed contract of sale of articles of food, that the same are sound, wholesome, and fit for use as such; where the

vendor has *personal knowledge of the quality and condition of the articles sold, not known to the purchaser, and that the party purchasing intends to use the articles for food, or to sell them to others to be used for the same purpose.*

Judgment should be reversed and new trial ordered in the County Court, costs to abide the event.

Present — LEARNED, P. J., BOARDMAN and TAPPAN, JJ.

Ordered accordingly.